IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| LORI LANEE HANKINS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:20-cv-00040-O-BP |
| | § | |
| ANDREW M. SAUL, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

**ORDER ACCEPTING FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Plaintiff Lori Lanee Hankins ("Hankins") filed her action under 42 U.S.C. § 405(g), seeking judicial review of the denial by the Commissioner of Social Security ("Commissioner") of her application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act ("SSA"), and Supplemental Security Income ("SSI") payments under Title XVI. Compl., ECF No. 1; Appellant's Br., ECF No. 17. After reviewing all relevant matters of record in this case, including the Findings, Conclusions, and Recommendation of the United States Magistrate Judge and any objections thereto, in accordance with 28 U.S.C. § 636(b)(1), the Court believes that the Findings and Conclusions of the Magistrate Judge are correct, and they are **ACCEPTED** as the Findings and Conclusions of the Court. After considering the pleadings, briefs, administrative record, and applicable legal authorities, the Court **AFFIRMS** the decision of the Commissioner.

I.  STATEMENT OF THE CASE

The following facts are taken from the Findings, Conclusions, and Recommendation of the Magistrate Judge. FCR, ECF No. 20. Hankins, born March 1, 1965, has a high school equivalency

diploma. See Soc. Sec. Admin. R. (hereinafter, "Tr.") 32, 57, ECF No. 15-1. Hankins was fifty-one years old when she applied for benefits, which is defined as closely approaching advanced age. Tr. 57. She was previously employed as a head school cafeteria cook, cashier, light housekeeper, and auto title clerk. Tr. 22. Hankins claims disability resulting from a combination of impairments and thus that she is entitled to relief under the SSA. Compl., ECF No. 1. On May 11, 2017, Hankins filed applications for a period of disability, DIB, and SSI payments. Tr. 15. In each, she alleged disability beginning on January 25, 2017. *Id.* On July 18, 2017, the claim was denied. *Id.* Upon reconsideration on November 14, 2017, the claim was denied again. *Id.* Hankins requested a hearing before Administrative Law Judge ("ALJ") Brock Cima in Fort Worth, Texas on February 27, 2019—Hankins, her attorney, and a vocational expert ("VE") were all present. *Id.* The ALJ issued an adverse ruling on April 23, 2019. Tr. 12.

Specifically, the ALJ used the statutory five-step analysis and established during the first step that Hankins had not engaged in substantial gainful activity since the alleged onset date (January 25, 2017). Tr. 18. At step two, the ALJ found that severe impairments (cervical spondylosis with radiculopathy), degenerative disc disease ("DDD") of the lumbar spine, ulnar neuropathy, and obesity. *Id.* Then, ALJ found at step three that Hankins's impairments did not meet or medically equal the severity of any listed impairment in 20 C.F.R. Pt. 404(p). *Id.* Specifically, the ALJ concluded that Hankins maintained the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), subject to limitations prohibiting her climbing ladders, ropes, or scaffolds. Tr. 19. At step four, the ALJ determined that Hankins is able to perform past relevant work as an auto title clerk, which does not require work-related activities that her RFC precludes. Tr. 22. Finally, at step five, the ALJ

2

determined that Hankins has not been under a disability as defined in the Social Security Act since January 25, 2017. *Id.*

The Appeals Council ("AC") denied review on November 19, 2019. Tr. 6. The Magistrate Judge issued Findings, Conclusions, and Recommendations on September 28, 2020. FCR 13, ECF No. 20. Hankins filed an Objection on October 8, 2020. Obj., ECF No. 21. Therefore, the Court reviews this case de novo.

## II.   STANDARD OF REVIEW

Title II, 42 U.S.C. § 404 *et seq.*, of the SSA governs the disability insurance program in addition to numerous regulations concerning disability insurance. *See* 20 C.F.R. § 404 (2020). The SSA defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A) (2020); *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir. 1999).

To determine whether a claimant is disabled and thus entitled to disability benefits, the Commissioner employs a sequential five-step analysis. 20 C.F.R. § 404.1520. First, the claimant must not be engaged in any substantial gainful activity. *Id.* § 404.1520(a)(4)(i). "'Substantial gainful activity' is work activity involving significant physical or mental abilities for pay or profit." *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002) (citing 20 C.F.R. § 404.1572(a)–(b)). Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(a)(4)(ii); *see also Stone v. Heckler*, 752 F.2d 1099, 1100–03 (5th Cir. 1985). Third, disability exists if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Part 404, Subpart P, App.

1. 20 C.F.R. § 404.1520(a)(4)(iii). Fourth, the impairments must prevent the claimant from returning to past relevant work. *Id.* § 404.1520(a)(4)(iv). Before this step, the ALJ assesses the claimant's RFC, which is "the most [a claimant] can still do despite [the claimant's] limitations." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *accord* 20 C.F.R. § 416.945(a)(1). Fifth, impairments must prevent the claimant from doing any work after considering the claimant's RFC, age, education, and work experience. *Crowley*, 197 F.3d at 197–98; 20 C.F.R. § 404.1520(a)(4)(v).

"A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987). "The claimant bears the burden of showing [he or] she is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007).

The Court reviews the Commissioner's decision to determine whether the Commissioner applied the correct legal standards and whether substantial evidence in the record as a whole supports the decision. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). "Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. It is more than a mere scintilla and less than a preponderance. A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000) (internal quotation marks omitted) (quoting *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995)). The Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but it will carefully scrutinize the record to determine if substantial evidence is present. *Id.*; *Hollis*, 837 F.2d at 1383. "Conflicts in the evidence are for the Commissioner and

not the courts to resolve." *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000) (internal punctuation omitted) (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)).

## III. ANALYSIS

Hankins raises two objections, claiming that the ALJ failed to (1) fully consider all of her vocationally significant impairments in the RFC determination, and (2) the ALJ errantly substituted his own medical judgment in place of medical opinion evidence of record. Appellant's Br. 2–3, ECF No. 17.

### A. The ALJ's RFC Determination is Supported by Substantial Evidence.

Hankins first argues that the ALJ failed to consider all functional limitations in his RFC determination. *Id.* at 7–10. She contends that the ALJ did not adequately conduct function-by-function analysis of her limitations' side effects while determining RFC. *Id.* at 7. Pointedly, Hankins asserts deficiency in the ALJ's RFC determination because the determination omitted consideration of the impact on her ability to perform her past work or any other work resulting from her neck's limited range of motion. *Id.* at 7. Similarly, Hankins claims that the RFC determination did not account for her need to change positions constantly throughout the day, eliminating her capacity for sedentary work. *Id.* at 8.

The Commissioner responds by arguing that the ALJ— who did not view Hankins's impairments as severely as she—properly considered all functional limitations actually supported by the medical record and medical evidence. Resp. 7–9, ECF No. 18. Subjective symptoms alone, claims the Commissioner, are insufficient to support a disability finding. *Id.* at 9. Moreover, Hankins's normal gait, mobility of extremities, and stable symptoms without side effects from medication further establish that her limitations are less impactful than she asserts. *Id.*

A claimant's RFC is defined as the most the claimant can still do in light of impairments and related symptoms. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1) (2020). "The responsibility for determining a claimant's RFC lies with the ALJ . . . [and] the ALJ must discuss the claimant's ability to perform sustained work activity on a regular and continuing basis and resolve any inconsistencies in the evidence." *Ewing v. Colvin*, No. 4:13-CV-085-A, 2014 WL 2464765, at *4 (N.D. Tex. June 2, 2014) (citing *Villa v. Sullivan*, 895 F.2d 1019, 1023-24 (5th Cir. 1990); SSR 96-8p, 1996 WL 374184, at *7 (S.S.A. July 2, 1996)). "The ALJ is not required to incorporate limitations in the RFC that he did not find to be supported in the record." *Id.* (citing *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991)). Nor must the ALJ expressly state in the RFC the limitations on which it is based. *Cornejo v. Colvin*, No. EP-11-CV-470-RFC, 2013 WL 2539710, at *9 (W.D. Tex. June 7, 2013) (citing *Bordelon v. Astrue*, 281 F. App'x 418, 422–23 (5th Cir. 2008) (per curiam)). "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. [§§] 404.1545 and 416.945." SSR 96–8p, 1996 WL 374184, at *1 (July 2, 1996). The functions in paragraphs (b), (c), and (d) relate to physical, mental, and other abilities. The ALJ considers the nature and extent of the claimant's physical, mental, and other relevant limitations. 20 C.F.R. § 404.1545.

In determining physical limitations, the ALJ considers evidence of the claimant's abilities to sit, stand, walk, lift, carry, push, pull, and perform other physical functions. *Id.* § 404.1545(b). In determining mental limitations, the ALJ considers evidence of the claimant's abilities to understand, remember, and carry out instructions, as well as respond appropriately to supervision, co-workers, and work pressures in a work setting. *Id.* § 404.1545(c). The ALJ uses the "paragraph B criteria" to rate the degree of the claimant's mental limitations in understanding, remembering,

or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* § 404.1520a; *see id.* Part 404, Subpart P, Appendix 1. Finally, the ALJ considers limitations and restrictions that affect other work-related abilities. 20 C.F.R. § 404.1545(d).

When the claimant alleges subjective complaints of pain, objective evidence must corroborate these allegations. *Houston v. Sullivan*, 895 F.2d 1012, 1016 (5th Cir. 1989). Pursuant to SSR 96-7p, an ALJ assessing a claimant's allegations of symptoms such as pain or fatigue must conduct an objective-subjective, two-step analysis. *Salgado v. Astrue*, 271 F. App'x 456, 458 (5th Cir. 2008). In the first, objective, step, the ALJ must determine whether there is an impairment that could reasonably be expected to produce the claimant's symptoms. *Id.* If the ALJ identifies an impairment at step one, then the ALJ proceeds to the second, subjective, step and "considers the applicant's statements about symptoms and the remaining evidence in the record to determine the strength of the symptoms and how the symptoms affect the applicant's ability to do basic work." *Id.* at 459. This requires a credibility finding regarding the applicant's claims about symptoms. *Id.* Further, "[t]he evaluation of a claimant's subjective symptoms is a task particularly within the province of the ALJ, who has had an opportunity to observe whether the person seems to be disabled." *Loya v. Heckler*, 707 F.2d 211, 215 (5th Cir. 1983). The ALJ's "evaluation of the credibility of subjective complaints is entitled to judicial deference if supported by substantial record evidence." *Villa*, 895 F.2d at 1024.

Hankins claims that during RFC analysis, the ALJ forewent consideration of her cervical spine's limited range of motion. Specifically, she alleges that her spine's limited mobility results in difficulty adjusting her neck to look up at customers. Appellant's Br. 6, ECF No. 17. She also proffers that headaches and pain under both of ears results from her neck pain three times a day.

7

Tr. 44–45. Hankins lies down and uses a vibrating neck pillow to ease the pain. Tr. 45. The Commissioner cites the record in arguing that despite asserting limited range of motion in her neck in October of 2017, Hankins's gait, mobility in her extremities, and motor strength were normal. Resp. 10–11, ECF No. 18. Further, the Commissioner notes that in November 2018, Hankins denied any back pain or weakness. *Id.* at 10.

Hankins also alleges deficiency in the ALJ's RFC determination for failure to incorporate her inability to extensively sit, stand, or walk in one position. Appellant's Reply Br. 2, ECF No. 19. Hankins specifically claims an ability to remain in one position an hour at maximum before repositioning. Tr. 48. And she concludes that her inability to sit for a six of eight workday hours renders her ineligible for sedentary work. Appellant's Br. 9, ECF No. 17. The Commissioner responds that the ALJ did consider her claims of limited standing and walking ability and still found those claims unsupported by medical evidence. Resp. 9, ECF No. 18. The Commissioner opined that Hankins's normal gait during the alleged disability period, in addition to her normal extremity movement and motor strength, provide support for the ALJ's conclusion that her limitations were less severe than Hankins claimed. *Id.*

Although Hankins testified regarding the extent of her pain and the limitations on activities caused by her neck pain and inability to remain in one position for extensive periods, she failed to substantiate the subjective claims of resulting ineligibility for sedentary work with objective medical evidence in the record. The ALJ set forth the proper legal standards, defined the bounds of the requisite two-step, objective-subjective analysis, and comported with proper legal standards. Tr. 18-21. Upon consideration of the record, the ALJ determined at first step that one could reasonably expect Hankins's medically determinable impairments to cause some symptoms she alleged. Tr. 21. But after considering complaints of pain caused by neck movement and need to

frequently switch positions alongside the medical evidence, the ALJ decided that Hankins's assertions regarding the intensity, persistence, and limitations resulting from her symptoms were not fully credible. Tr. 19-21. Notwithstanding that conclusion, the ALJ still considered Hankins's unsupported allegations of neck pain from her cervical spine's limited mobility, her need to frequently reposition, and the resulting limitations, and determined that Hankins maintained sedentary work capability with minor postural and manipulative limitations (like inability to climb ladders, ropes, or scaffolds). Tr. 19.

Substantial record evidence supports the ALJ's determination that Hankins could, on a sustained basis, perform sedentary work. The ALJ evaluated her cervical spine's limited and painful range of motion and noted her claims of a limited range of motion in her neck in her earlier doctor visits. Tr. 20. However, he found that during doctor's appointments in September, October, and November 2018, Hankins's neck and all major muscle groups and joints were fully mobile, and her muscle tone and strength were grossly normal. Tr. 20-21. The ALJ's analysis also included the negative findings of Hankins's left and right Spurling Test, normal sensations, the absence of weakness or pain with movement, and both arms' full range of motion. Tr. 20. Noting these improvements, the ALJ determined that Hankins's limitations resulting from her cervical spine's limited range of motion were less severe than she claimed. Tr. 21.

The ALJ also evaluated Hankins's claims of inability to remain in one position for more than thirty minutes to an hour. Tr. 21. The ALJ found that Hankins's allegations were unsupported by the record. The ALJ noted, for example, that Hankins had a normal bilateral straight leg raise as well as a normal gait and stance during the relevant period. TR. 20. And in October 2018, she had a full and painless range of motion in all major muscle groups and joints, along with muscle tone and strength that was grossly normal. Tr. 21. In November 2018, Hankins also denied

9

experiencing any weakness or back pain. *Id.* The medical record also evinces stability in her symptoms, and that her medications controlled symptoms without side effects. Tr. 20. Moreover, both state agency medical consultants also found Hankins's allegations of the severity of her pain and limitations unsupported by medical and other evidence. Tr. 21, 61, 82.

Hankins has failed to show that the ALJ's RFC determination was based neither on credible evidentiary choices nor medical findings. She instead argues that other record evidence substantiates her assertion of inability to perform previous work as a title clerk since she cannot raise her head to communicate with customers or sit for at least six of eight workday hours. *See* Appellant's Br. 7, ECF No. 17. Hankins's "burden is not to highlight evidence contrary to the ALJ's ruling, but to show that there is no substantial evidence supporting the ALJ's decision." *Caldwell v. Colvin*, No. 4:15-CV-00576-O-BL, 2016 WL 3621097, at *3 (N.D. Tex. June 10, 2016), *rec. adopted,* No. 4:15-CV-00576-O, 2016 WL 3523780 (N.D. Tex. June 28, 2016). Hankins may not agree with the ALJ's RFC determination, but disagreement alone is insufficient to meet her burden of establishing that the ALJ's determination is not supported by substantial evidence. Thus, reversing the ALJ's decision is not required on Hankins's insubstantial evidence claim.

> B. **The ALJ did Not Improperly Substitute His Medical Judgment for the Medical Opinion Evidence of Record**.

Hankins argues that the ALJ errantly used his own medical judgment in place of the record's medical opinion evidence. Appellant's Br. 3, ECF No. 17. Hankins attempts to support this claim by noting that although both state agency medical consultants found functional capacity for performing "a limited range of light work" and that Hankins had "postural limitations but no manipulative limitations," the ALJ disagreed that Hankins had no manipulative limitations. *Id.* at 10–11. Therefore, Hankins contends that since the ALJ disagreed with the "only medical opinion

in this record as to [Hankins'] ability to use her hands for handling and fingering," the ALJ cannot find for Hankins's ability to "finger frequently bilaterally." *Id.* at 12.

The Commissioner contends that Hankins mischaracterizes the ALJ's proper interpretation of medical evidence in determining work capacity as substitution of the ALJ's own medical judgment. Resp. 14, ECF No. 18. In addition, the Commissioner argues that although the state agency medical consultants did not find any manipulative limitations, other evidence in the record––specifically the January 2017 magnetic resonance imaging ("MRI") of her cervical spine—corroborate the ALJ's finding of slight limitation. *Id.* Thus, the Commissioner states, the ALJ was "free to incorporate limitations he finds consistent with the record." *Id.* (citing *Andrew v. Astrue*, 917 F. Supp. 2d 624, 642 (N.D. Tex. 2013)).

The ALJ did not substitute his own medical judgment in place of Hankins's physicians' opinions or the state agency medical consultants' opinions. The ALJ, at most, placed an additional restriction on Hankins's ability to work that actually operates in Hankins's favor. Both state agency medical consultants found Hankins able to perform sedentary work with postural limitations. Tr. 21. But based on the record medical evidence, the ALJ found their opinions only "somewhat persuasive" for want of the required manipulative limitations otherwise established by medical evidence. *Id.* The MRI on which both medical consultants' opinions were based evinced Hankins's moderate degenerative spondylosis with a reversal of cervical lordosis, moderate central canal stenosis at C4-5 and C5-6, severe foraminal stenosis at left C5-6, degenerative changes and DDD, disc bulging at L4-L5 and L5-S1, broad base central disc herniation at L3-L4, and left paramedian disc herniation at L1-L2. *Id.* Based on the medical consultants' MRI interpretation and Hankins's testimony regarding her inability to lift things in light of her pain, the ALJ concluded that

Hankins's condition required manipulative limitations. Tr. 19, 21. The ALJ did not substitute personal medical judgment for record medical evidence.

But even if the ALJ did so in ascertaining Hankins's ability to handle and finger bilaterally, such error was harmless. Hankins complained of difficulty using her upper extremities and stated that her fingers go numb during her hearing testimony. Tr. 32, 41. In light of her claims of arm and finger pain, the ALJ's RFC determination serves Hankins by imposing a manipulation limitation. *Id.* "[P]rocedural perfection in administrative proceedings is not required. [The] Court will not vacate a judgment unless the substantial rights of a party have been affected." *Barratt v. Astrue*, No. 07-5167, 2008 WL 2325636, at *2 n.1 (5th Cir. 2008) (citing *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988). Here, the ALJ's finding of manipulation limitations comports with the medical records and certainly does not negatively impact Hankins's rights. If the ALJ erred at all, it was harmless.

### IV.   CONCLUSION

Accordingly, it is **ORDERED** that the Commissioner's decision is **AFFIRMED**.

**SO ORDERED** on this **19th day of October, 2020.**

*Reed O'Connor*
**UNITED STATES DISTRICT JUDGE**